# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

EDWIN JOEL MONTIJO-GONZÁLEZ,

    Defendant.

CRIMINAL NO. 12-786 (DRD)

## OPINION AND ORDER

Pending before the court is defendant Edwin Montijo González's motion for reconsideration (D.E. 51) of its report and recommendation (D.E. 47). It was recommended that defendant's motion to suppress (D.E. 29) be denied pursuant to the good-faith exception to the exclusionary rule. Defendant seeks reconsideration on the grounds that the report and recommendation did not consider his proffered reply.[1] (See D.E. 44-1).

As an initial matter, the report and recommendation pointed out that defendant argued in his proffered reply that the good-faith exception should be inapplicable in this case because "'an officer cannot manifest objective good faith if the warrant is supported by an affidavit that is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" (D.E. 47, at 9 n.3 (quoting D.E. 44-1, at 7 (internal quotation omitted)). Because the basis for the recommendation that the motion to suppress be denied was the good-faith exception, rather than lack of standing under the Fourth Amendment or absence of probable cause, only defendant's arguments pertaining to the good-faith exception are applicable here.

---

[1] Defendant is reminded that, even when tendering a proffered reply in conjunction with a motion for leave to file a reply, one must still file the reply after receiving authorization.

Defendant cites United States v. Hove, 848 F.2d 137 (9th Cir. 1988), for the proposition that, because "[t]here is nothing in the affidavit linking the location to be searched with any criminal conduct[,] … any official belief in the existence of probable cause must be considered unreasonable." (D.E. 44-1, at 8). In Hove, the affiant had previously "learned that [defendant] and the couple's only child stayed with several different relatives and that one of their current residents may have been with [her] father," which the affiant "learned … by tracing a phone number given to him by [defendant] and her sister" and by "observ[ing] toys in the yard and a car, previously identified as belonging to [defendant], in the parking lot." 848 F.2d at 139. Nevertheless, none of this information was included in the final affidavit. Id. Rather, "the affidavit simply list[ed] the … address [in question] as a location to be searched," without "offer[ing] [a] hint as to why the police wanted to search this residence." Id. at 139–40. In the instant case, however, as the report and recommendation summarizes, "[a]ccording to the affidavits, the alleged drug sellers installed and regularly manipulated illegal gates inside of Building 7, regulating access to individual apartments, in order to assist in their use of the common area of the building as a drug point." (D.E. 47, at 11). Agent Ángel Rosado Hernández ("Agent Rosado") "based his conclusion that they maintained full control of the building on the placement of these illegal gates, their use in alleged drug transactions, and their constraints on access to other floors." Id. Considering the existence of illegal gates set up in Building 7 of the Enrique Zorrilla Public Housing Project, corroboration from the director of security for public housing in the Region of Arecibo, law enforcement's surveillance of Building 7, and the fact that the intervention of several individuals immediately after visiting Building 7 revealed drugs in their possession, it cannot be said in this case that the affidavits in support of the application for a

search warrant "offer[ed] no hint as to why the police wanted to search [Building 7]" for purposes of the good-faith exception. Hove, 848 F.2d at 139–40.

Defendant also contends that the Puerto Rico Supreme Court has held that, "as a general rule, when law enforcement cannot establish probable cause because they cannot see the target from the outside of the building, the Police can request an order authorizing them to enter the common areas of the building to identify and establish a more beneficial surveillance point." (D.E. 44-1, at 8 (citing Pueblo v. Pérez Pérez, 15 P.R. Offic. Trans. 1095 (1984)). First, Pérez Pérez does not involve the Fourth Amendment of the U.S. Constitution. Rather, it involves Article II, Section 10, of the Constitution of the Commonwealth of Puerto Rico. Its only mention of the Fourth Amendment is in the final paragraph, where it mentions that "it is interesting to note, that although some authorities hold contrary opinions, a considerable number of United States courts extend the protection afforded by the Fourth Amendment to the common areas of multistory buildings." 15 P.R. Offic. Trans. at 1100.

Moreover, Pérez Pérez is factually distinguishable from the instant case. According to the Puerto Rico Supreme Court, "[a]s a rule, and when outdoor surveillance is not enough, the best solution would be for the police to go before a judge to obtain, after the pertinent proceedings, his authorization to enter the common areas of the property in order to set up satisfactory surveillance points." Id. at 1099–1100. In a footnote, the court pointed out that "[o]nly when the manager of a building, his representative, or other tenant allows entry to a condominium, have several courts recognized the legality of police actions conducting surveillance in common areas." Id. at 1100 n.2. Pérez Pérez involved an agent who surreptitiously entered into a building's common areas to obtain surveillance. Id. at 1097–98. Contrary to the case presently before the court, the agent in Pérez Pérez did not obtain a search

warrant, either for the common area or the entire building.  Pérez Pérez can be understood as indicating that, if law enforcement does not have probable cause to search an entire building or a particular apartment in said building, it may incrementally apply for a warrant limited in scope to search the common areas of said building.  Nevertheless, it should not be read as a *per se* prohibition against applying for a warrant to search an entire building.

Finally, defendant argues that, because Agent Rosado's affidavit indicates that Sergeant Ángel Pérez-Rosario "gave him instructions to obtain a search warrant for the inside of Building 7 of the Zorilla [*sic*] PHP," he only had authorization to search the "common areas, … not the apartments."  (D.E. 44-1, at 9 (citing D.E. 43, at 4)).  Regardless of Sergeant Pérez-Rosario's instructions, however, the search warrant explicitly authorized Agent Rosado to "proceed immediately with the search of building 7 from the Zorrilla Public Housing Project and the apartments 57 to 68 of the same place."  (D.E. 50-1, at 9).  The probable cause analysis depends on whether the "[a]ffidavit contain[s] information showing a 'fair probability' that evidence of a crime would be found there."  United States v. Grant, 218 F.3d 72, 75 (1st Cir. 2000) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  In other words, the analysis is "limit[ed] … to the four corners of the affidavit submitted in support of the warrant applications."  United States v. Burgos Montes, Crim. No. 06-009 (JAG), 2011 WL 1743420, at *5 (D.P.R. May 2, 2011).  The good-faith exception analysis, in turn, depends on whether "the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate …."  Massachusetts v. Sheppard, 468 U.S. 981, 987–88 (1984).  The nature of instructions given to an officer before he completes an affidavit is irrelevant to the whether the affidavit itself is "'so lacking in indicia of probable cause as to render official belief in its existence entirely

unreasonable.'" United States v. León, 468 U.S. 897, 923 (1984) (quoting Brown v. Illinois, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)).

For the aforementioned reasons, defendant's motion for reconsideration (D.E. 51) is hereby **DENIED**.[2]

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of May, 2013.

s/Marcos E. López  
U.S. Magistrate Judge

---

[2] Nothing in the analysis of the report and recommendation (D.E. 47), however, should be construed as an opinion on whether the search warrant was properly issued in the first place by the Puerto Rico Court of First Instance, Arecibo Part.